IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KIRK MEDEARIS,

               Plaintiff,

     v.

CVS PHARMACY,

               Defendant.

CIVIL ACTION FILE NO.

1:13-CV-1847-TWT-JFK

## FINAL REPORT AND RECOMMENDATION

Plaintiff Kirk Medearis filed the above-styled employment discrimination action on June 3, 2013. [Doc. 1]. Plaintiff Medearis alleges that Defendant CVS Pharmacy subjected him to discrimination on the basis of disability and race. [Id.]. Plaintiff's claims are based on Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*[1] [Id.]. Plaintiff asserts that Defendant refused to make reasonable accommodations for him to work light duty and required him to "work under much stricter and far less equal terms and conditions." [Doc. 1].

---

[1]Plaintiff used a Title VII form complaint provided by the court for *pro se* litigants. [Doc. 1]. Although Plaintiff did not specifically state that he was bringing claims based on the ADA, the court finds that he intended to do so based on his allegations of disability discrimination. [Id.].

Defendant CVS has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on Plaintiff's claims based upon the pleadings, statements of material facts, exhibits, and discovery materials submitted to the court. [Doc. 48].

## I. Facts

When evaluating the merits of a motion for summary judgment, the court must "view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party." Comer v. City of Palm Bay, Florida, 265 F.3d 1186, 1192 (11th Cir. 2001). However, mere conclusions and unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Defendant's motion [Doc. 48] for summary judgment.

Plaintiff Kirk Medearis began working for Defendant CVS Pharmacy in 1999 in Philadelphia. [Plaintiff's Deposition ("Pla. Dep") at 26]. Plaintiff Medearis was promoted to store manager around May or June of 2000. [Pla. Dep. at 27]. After a number of transfers, including working in Miami, Plaintiff eventually became the Store

AO 72A
(Rev.8/82)

Manager of store 4178 in southwest Atlanta. [Id. at 42-44, 67-69]. Bob Johnson was Plaintiff's District Manager at store 4178, followed by Herb Farley "for a few weeks." [Id. at 68-69, 109]. In 2011, Plaintiff was assigned to the Store Manager position of another CVS store in Atlanta, store 4147, where Neal Lindler was his District Manager. [Id. at 87-88; Lindler Declaration ("Dec.") ¶ 2].

Plaintiff testified that as a Store Manager, he needed to do things like lift, bend, and squat. [Pla. Dep. at 46]. He also stated that he was required to work a flexible schedule and that he was "essentially on call if anything was needed at [his] store." [Id. at 47-48]. Plaintiff testified that as a Store Manager, he regularly helped unload the delivery truck. [Id. at 74]. According to Plaintiff, one day per week, the store received a truckload of deliveries, and he and another employee spent the entire day unloading the truck and distributing the merchandise to the stocking shelves. [Pla. Dep. at 76-78]. Plaintiff often had to carry merchandise up steps. [Id. at 76]. On another day each week, Plaintiff walked around the store with a handheld scanning gun to scan out of stock merchandise. [Id. at 79-80]. Plaintiff testified that when a store's hours are reduced, it requires the Store Manager to do more physical work, including

reorganizing, resetting, customer service, and cleaning. [Pla. Dep. at 92, 98-100; Defendant's Statement of Material Facts ("DSMF") ¶ 10].[2]

On October 1, 2011, Plaintiff sent an email to District Manager Neal Lindler and Bob Henderson, a CVS Human Resources Business Partner, requesting three accommodations related to his treatment for rheumatoid arthritis. [DSMF ¶ 1; Henderson Dec. ¶ 2; Henderson Dep. at 9].[3] Plaintiff requested 50 extra operating hours per week, palletized truck deliveries to his store, and a flexible work schedule. [DSMF ¶ 1; Plaintiff's Statement of Material Facts ("PSMF") ¶ 1; Henderson Dep. at 19-21; Doc. 53, Ex. 3]. Plaintiff testified that he required all of these accommodations in October 2011. [Pla. Dep. at 204-05; Doc. 53, Ex. 3]. Henderson testified that he viewed Plaintiff's request for 50 extra hours per week as "essentially, what he's asking for is someone to do his job." [Henderson Dep. at 21]. Henderson responded to the email the next day by writing:

---

[2]The court accepts as admitted those facts in Defendant's statement that Plaintiff has not directly refuted with "responses supported by specific citations to evidence (including page or paragraph number). . . ." L.R. 56.1B.(2), N.D. Ga. Plaintiff has denied most of Defendant's factual statements. [Doc. 53-5]. Those denials that are not explained or supported with specific citations to the record will not be considered by the court.

[3]Plaintiff testified that his rheumatoid arthritis was not a work-related condition. [Pla. Dep. at 205-06].

> Kirk, you have to call into to [sic] corporate to request accommodations. They don't go to your DM [District Manager]. Then we will engage in an active accommodation process to see what we can and cannot accommodate. Your Dr. will have to fill out some documentation as well. Once we receive the request from corporate then we can begin the process. We welcome the process per the ADA guidelines.

[Henderson Dep. at 19-22; Doc. 53, Ex. 3; PSMF ¶ 2].[4] Plaintiff Medearis provided CVS with information from his physician, Dr. Karen Law, dated October 13, 2011. [Doc. 53, Ex. 6; PSMF ¶ 4]. Dr. Law wrote a letter which stated in pertinent part:

> Mr. Kirk Medearis is a patient seen in Rheumatology Clinic for an ongoing joint condition. His condition causes swelling, stiffness, and pain in his joints which is sometimes exacerbated by activity. . . . [W]hile his medications are being adjusted I recommend that he goes on light duty at his occupation, and should limit heavy lifting to no more than 10 lbs, and limit periods of standing to no longer than an hour at one time. He will need to take frequent breaks. He will return to my office in 6 weeks time for re-evaluation, and we will determine his ability to increase duties at that time.

[Id.].

On October 14, 2011, Henderson directed District Manager Lindler to inform Plaintiff Medearis "that he needs to apply for LOA [leave of absence] immediately, then we can see if we can accommodate the restrictions. But 10 lbs as a store manager [we] would not be able to accommodate. Therefore he needs to be on Full LOA until

---

[4]Plaintiff also made a request for a job modification on October 4, 2011, via a telephone call. [PSMF ¶ 3; Henderson Dep. at 25-26; Pla. Dep., Ex. 4].

5

his restrictions are applicable." [PSMF ¶ 5; Doc. 53, Ex. 7]. Ten days later, on October 24, 2011, Henderson sent Plaintiff an email further explaining the reason for the leave of absence. [Doc. 53, Ex. 9; PSMF ¶ 14]. Henderson wrote in part:

> [Y]our doctor said in his note that your condition would be "exacerbated by activity" until your medication was corrected. He then went onto the limitations. I didn't want to take a chance of causing harm to your condition and not being able to comply with the directives. Even the restriction of no lifting over 10 lbs I couldn't guarantee that we could accommodate in a FS manager position. We have many items that exceed this limit and didn't want you to be noncompliant with your Dr. order and trying to help a customer. So the best thing to protect you was the LOA that is what it is there for.

[Doc. 53, Ex. 9; PSMF ¶ 14]. According to Defendant CVS, lifting more than 10 pounds, standing for longer than an hour, working a flexible schedule, and unloading merchandise from a truck and distributing it throughout the store were essential functions of Plaintiff's Store Manager position.[5] [DSMF ¶ 5]. In the job description of a CVS Store Manager, the physical requirements of the job are described as follows: "Ability to lift 35 pound trays/cases to height of 4 feet and move trays/cases from one location to another in the store; ability to bend and squat frequently to move/locate merchandise." [PSMF ¶¶ 9, 18; Henderson Dep. at 135-40; Doc. 53, Ex. 15]. CVS

_____

[5]Henderson does not know how many items in the store weigh more than 10 pounds. [PSMF ¶ 14; Henderson Dep. at 50-51].

AO 72A

(Rev.8/82)

asserts that a Store Manager's inability to perform these functions would have a business impact on the store. [Id.].

On October 18, 2011, Defendant CVS mailed Plaintiff Medearis a letter and a "reasonable accommodation questionnaire" form. [PSMF ¶ 13]. The form was completed by Plaintiff's doctor and provided to CVS on November 6, 2011. In the form, Plaintiff's doctor recommended part-time employment with frequent rest periods, no lifting of more than 10 pounds, and no standing for more than 30 minutes at a time. [Doc. 53, Ex. 11; PSMF ¶ 15]. If part-time, light duty work in accordance with these recommendations was not available, then the physician recommended a short term leave of absence. [Doc. 53, Ex. 11]. Plaintiff was on leave pursuant to the Family and Medical Leave Act ("FMLA") from October 18, 2011, until November 29, 2011, when he returned to his Store Manager position. [Pla. Dep. at 211, 292; Plaintiff's Response ("Pla. Resp.") to DSMF ¶¶ 15, 16, 18].

Plaintiff Medearis returned to work with a physician's note on November 29, 2011. The physician recommended that Plaintiff return slowly to his regular duties, that lifting be limited to no more than 15 pounds, that standing be limited to no more than four hours at a time, and that Plaintiff be permitted to take periodic breaks as

7

needed. [Pla. Dep. at 225-26; Doc. 50-1 at 33; DSMF ¶ 11]. Plaintiff was asked and

testified to the following:

> Q. Are you claiming that when you returned to work November 29th, 2011, those restrictions were not followed?
>
> A. Yes, they were not followed.
>
> Q. Because you were, as a store manager, after November 29th, 2011, required to lift more than 15 pounds, right?
>
> A. Yes.
>
> Q. And you were required to sometimes stand for periods longer than four hours at a time?
>
> A. Yes.
>
> Q. And there were times when you might need to take a periodic break but you were unable to do that?
>
> A. Yes.
>
> Q. Because that's what the demands of the store manager position at [store] 4147 required at that time?
>
> A. Uh-hum. Yes.

[Pla. Dep. at 226-27]. Plaintiff testified that he had a conversation with Lindler

regarding his doctor's note when he returned from his leave of absence around

November 29, 2011. [DSMF ¶ 12]. Plaintiff told Lindler that he "still had some

restrictions" and that his doctor still "wanted [him] to be on some form of light duty

to see how [he] work[s] on the medication. . . ." [DSMF ¶ 12; Pla. Dep. at 292-93].

Plaintiff testified that when he talked to Lindler about the restrictions, Lindler "may

have made a reference to, I'll see if we can do that." [Pla. Dep. at 300]. Plaintiff

claims that when he returned to work on November 29, 2011, he had not been taking

8

the medication for his rheumatoid arthritis long enough to know how it would impact him. [Pla. Dep. at 298]. However, Plaintiff testified that he did not feel that the medication affected his ability to work as a Store Manager. [Id.]. Plaintiff was asked and testified to the following:

> Q.　At any point from November 29th until you started your second leave of absence, did you ever contact Mr. Henderson to tell him anything about your work-related restrictions?
> A.　Not myself personally because Neal Lindler said that he would pass all the information on to him. . . .
> Q.　[A]fter you returned to work in November 2011, did you ever call Mr. Henderson or reach out to Mr. Henderson to say that you thought your work-related restrictions were not being met?
> A.　No, because he was–no, I didn't.

[Pla. Dep. at 304].

On January 13, 2012, Plaintiff Medearis filed a charge of discrimination against Defendant CVS with the Equal Employment Opportunity Commission ("EEOC"). [DSMF ¶ 17; Pla. Dep. at 339, 341, Ex. 1]. Plaintiff asserted in the charge that Defendant had subjected him to discrimination on the basis of his race, African-American, and disability. [Pla. Dep. at 339, 341, Ex. 1]. Plaintiff wrote, in part:

> I have requested more operating hours from Regional Manager, Rodger Francis and District Manager, Neal Lindler and was denied. On October 1, 2011, I informed Mr. Lindler and Human Resource Manager, Robert Henderson of my disability and requested a reasonable accommodation and it was denied. On October 17, 2011, I requested light duty and it was

AO 72A
(Rev.8/82)

denied and I was forced to go on short term disability. On November 29, 2011, I returned back to work and requested light duty and was denied. On January 9, 2012, I was subject to different terms and conditions of employment by Loss Prevention Manager, Dan Daley in regards to my store audit.

[Pla. Dep. at 339, 341, Ex. 1].

On January 19, 2012, six days after filing his EEOC charge, Plaintiff emailed an internal complaint to CVS Area Vice President David Purdy. [Pla. Dep. at 305-06, Ex. 9]. Plaintiff alleged in the email that he was "being harassed by several members of field management . . . because of [his] race and disability (Rheumatoid Arthritis)." [Id.]. Plaintiff alleged *inter alia* that his store hours were cut, that he was "often treated with hostility on conference calls," and that he was issued a written warning when some CVS managers "fabricated a story that $40k worth of outdated merchandise was found in [Plaintiff's] store while [he] was on vacation." [Pla. Dep. at 305-06, Ex. 9]. Defendant CVS investigated Plaintiff's complaint, but Plaintiff alleges that the investigation was not sufficient. [Pla. Dep. at 180-81, 366-68; Doc. 53, Ex. 14].

On March 10, 2012, Plaintiff emailed Lindler with a request for another leave of absence. [DSMF ¶ 18; Pla. Dep. at 351, 355, Ex. 13]. A few days later, Plaintiff provided CVS with a doctor's note indicating that he needed leave through April 13,

2012. [Id.]. Plaintiff also applied for and received short term disability benefits while he was on his second leave of absence. [Pla. Dep. at 351, 355, Ex. 13]. On April 6, 2012, Plaintiff sent Lindler an email saying, "Unfortunately, I will not be able to return to work at this time according to my doctor's orders." [DSMF ¶ 19; Pla. Dep. at 352, 354-55, Ex. 13]. In the email to Lindler, Plaintiff also wrote, "I have been suffering from depression and anxiety due to the ongoing harassment I have been receiving from you." [Pla. Dep. at 352, 354-55, Ex. 13]. In September 2012, Plaintiff submitted his resignation from employment with CVS in an email to Bob Henderson in Human Resources. [Henderson Dec. ¶ 3, Ex. A]. Plaintiff testified that he was on short term disability until he submitted his resignation. [Pla. Dep. at 109-10].

Plaintiff currently receives Social Security disability payments based on his understanding that "they evaluated the fact that I'm under doctor's care for my rheumatoid arthritis. And then also for the mental aspect, I was diagnosed with depression two or severe depression, something to that effect." Plaintiff has not been employed since leaving CVS. [DSMF ¶ 28].

Additional facts will be set forth as necessary during discussion of Defendant's motion for summary judgment.

AO 72A
(Rev.8/82)

## II.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (amended 2010).  Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986).  The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion.  See Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).

The movant bears the initial burden of asserting the basis of his motion, and that burden is a light one.  See Celotex, 106 S. Ct. at 2553.  The movant is not required to negate his opponent's claim.  See id.  Rather, the movant may discharge this burden merely by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case."  Id. at 2554.

AO 72A

(Rev.8/82)

When evaluating a motion for summary judgment, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). Instead, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007) (citing Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)).

The court will apply these standards in ruling on the motion for summary judgment.

## III.    Discussion

### A.    ADA Failure to Accommodate

Plaintiff Kirk Medearis alleges that Defendant CVS discriminated against him on the basis of disability in violation of the ADA when the company failed to make reasonable accommodations for him. [Doc. 1]. The ADA prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual. . . ." 42 U.S.C. § 12112(a). The Eleventh Circuit has

13

held that the burden-shifting framework articulated in <u>McDonnell Douglas Corp. v.</u> <u>Green,</u> 93 S. Ct. 1817 (1973), does not apply to reasonable accommodation cases under the ADA. <u>See</u> <u>Nadler v. Harvey</u>, 2007 WL 2404705, at *9 (11th Cir. August 24, 2007); <u>see also</u> <u>Holly v. Clairson Industries, L.L.C.</u>, 492 F.3d 1247, 1262 (11th Cir. 2007) (finding that in an ADA failure to accommodate case, there are no additional burdens on defendant to show that it had a legitimate nondiscriminatory reason for terminating plaintiff or on plaintiff to establish that defendant's proffered reasons were pretextual); <u>Jones v. Georgia Dep't of Corrections</u>, 2008 WL 779326, *6 (N.D. Ga. March 18, 2008) ("The Eleventh Circuit came to the logical conclusion that the <u>McDonnell</u> <u>Douglas</u> test does not apply to reasonable accommodation claims in [<u>Nadler</u>], but it inexplicably did not publish the opinion and provide trial courts with a clear answer to this previously unaddressed issue.").

To establish a *prima facie* case of disability-based discrimination under the ADA, a plaintiff must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability. <u>See</u> <u>Greenberg v. BellSouth Telecommunications, Inc.</u>, 498 F.3d 1258, 1263 (11th Cir. 2007). An employer unlawfully discriminates against a qualified individual with a disability when the employer does not make "reasonable accommodations to the

14

known physical or mental limitations" of the employee unless "the accommodation would impose an undue hardship" on the employer.  42 U.S.C. § 12112(b)(5)(A); accord Anderson v. Embarq/Sprint, 379 Fed. Appx. 924, 927 (11th Cir. 2010) ("An employer impermissibly discriminates against a qualified individual when the employer does not reasonably accommodate the individual's disability.").  "An accommodation is 'reasonable' and necessary under the ADA only if it enables the employee to perform the essential functions of the job." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1259-60 (11th Cir. 2001).  "In other words, the ADA does not require the employer to eliminate an essential function of the plaintiff's job." Holly, 492 F.3d at 1256 (citation and internal quotation marks omitted).

Plaintiff alleges that Defendant CVS failed to provide him with a reasonable accommodation from October through November 2011, when Plaintiff requested accommodations related to his treatment for rheumatoid arthritis.  As noted *supra*, the first *prima facie* element requires the plaintiff to show that he is disabled.  The relevant provision of the ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual. . . ." 42 U.S.C. § 12102(1)(A).  In the present case, Plaintiff Medearis is able to establish the first

AO 72A

(Rev.8/82)

element because his rheumatoid arthritis constitutes a disability. Defendant does not dispute that Plaintiff is disabled under the ADA. [Doc. 48 at 16].

The second element of the *prima facie* case requires the plaintiff to establish that he is a "qualified individual." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual" as an employee "who, with or without reasonable accommodation, can perform the essential functions of" his job. 42 U.S.C.A. § 12111(8). "Accordingly, an ADA plaintiff must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation." D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1229 (11th Cir. 2005) (citation and internal quotation marks omitted). If the plaintiff cannot perform an essential function of his job, even with a reasonable accommodation, then he is not a "qualified individual" and is unable to establish a *prima facie* case. See Davis v. Florida Power & Light Co., 205 F.3d 1301, 1305 (11th Cir. 2000).

On October 13, 2011, Plaintiff's physician opined *inter alia* that Plaintiff should lift no more than 10 pounds and that he should stand for no more than an hour at a time. [Doc. 53, Ex. 6; PSMF ¶ 4]. Defendant CVS contends that a Store Manager's essential functions include lifting and moving heavy items and standing and moving

16

about the store. According to Defendant, with the limitations described by the physician, Plaintiff was unable to perform the essential functions of the job with or without a reasonable accommodation. Defendant argues that on this basis, Plaintiff is not a qualified individual and cannot establish a *prima facie* case of failure to accommodate. [Doc. 48 at 16-19].

The first issue that must be addressed is whether the essential functions of a CVS Store Manager require the ability to lift more than 10 pounds or stand for more than an hour at a time. "[E]ssential functions are the fundamental job duties of a position that an individual with a disability is actually required to perform." Holly, 492 F.3d at 1257 (citation and internal quotation marks omitted). The ADA provides, "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description . . . , this description shall be considered evidence of the essential functions of the job." 42 U.S.C.A. § 12111(8). "Courts consider the employer's judgment regarding whether a function is essential, as well as (1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the individual to perform the function, (3) the terms of a collective-bargaining agreement, (4) the work experience of individuals who held the job in the past, and (5) the work experience of individuals

currently in similar jobs." <u>Anderson</u>, 379 Fed. Appx. at 927-28 (citing <u>Holly</u>, 492 F.3d at 1257-58).

Defendant CVS asserts that lifting more than 10 pounds, standing for longer than an hour, and unloading merchandise from a truck and distributing it throughout the store were essential functions of Plaintiff's Store Manager position. [DSMF ¶ 5]. Although Plaintiff acknowledges that he performed physically demanding duties as a Store Manger, he argues that they were not essential functions of the position. [Doc. 53 at 5-10]. With regard to standing, Plaintiff testified that on one day each week, he walked around the store with a handheld scanning gun to scan out of stock merchandise. [Pla. Dep. at 79-80]. Plaintiff also testified that after he returned to work following his leave of absence, he sometimes stood for more than four hours at a time. [Pla. Dep. at 226-27]. Nevertheless, the court agrees with Plaintiff when he notes that CVS cites to no evidence supporting its assertion that standing for more than an hour at a time is an essential function of a Store Manager. [Doc. 53 at 9-10]. If this had been Plaintiff's only limitation, then a finding that Plaintiff was a qualified individual would be warranted. But for the reasons discussed *infra*, the court concludes that the unloading trucks, carrying merchandise, and lifting more than 10 pounds were

18

essential functions of the Store Manager position, and that, during the relevant period, Plaintiff was unable to perform these functions.

Plaintiff notes that a job description of a CVS Store Manager does not mention unloading trucks. [Doc. 53 at 9, Ex. 15]. However, the same job description states that a Store Manager must have the ability to bend and squat frequently, as well as the ability to lift and move merchandise weighing up to 35 pounds. [Id.]. Plaintiff also acknowledged during his deposition that as a Store Manager he regularly unloaded delivery trucks. [Pla. Dep. at 74]. According to Plaintiff, one day per week the store received a truckload of deliveries, and he and another employee unloaded the truck. [Id. at 76-78]. Plaintiff testified that depending on the size of the delivery, unloading the truck would take between one hour and two-and-a-half hours. [Id.]. Plaintiff often had to carry merchandise up steps while unloading. [Id. at 76]. After the truck was unloaded, Plaintiff and another employee spent the entire day moving the merchandise to the stocking shelves. [Pla. Dep. at 76-78].

Plaintiff cites to a document labeled "Store Management Job Functions" in further support of his argument that physically demanding tasks were not essential functions of a Store Manager. [Henderson Dep. at 143-44; Doc. 53, Ex. 16]. The document includes as a general requirement the "[a]bility to work flexible schedules,"

19

but it makes no mention of lifting or any other physical requirement necessary to perform the Store Manager job. [Id.]. However, Bob Henderson, a CVS Human Resources Business Partner, testified that this document was "identifying the more exempt functions" under the Fair Labor Standards Act ("FLSA") and that "the physical requirement would be more of a nonexempt function." [Henderson Dep. at 144; Doc. 53, Ex. 16]. Plaintiff has offered no evidence which casts doubt on Henderson's explanation.

Online job postings for Store Manager positions in Georgia include a summary of the manager's responsibilities, a list of required qualifications, and a list of preferred qualifications. [Doc. 53, Exs. 18-27]. Plaintiff notes that there is no lifting requirement mentioned. But listed under the position summary are activities requiring the ability to lift and carry, such as stocking shelves. [Doc. 53 at 6; Henderson Dep. at 158-63; Doc. 53, Exs. 18-27]. Furthermore, the job description of a CVS Store Manager lists the physical requirements of the job as follows: "Ability to lift 35 pound trays/cases to height of 4 feet and move trays/cases from one location to another in the store; ability to bend and squat frequently to move/locate merchandise." [PSMF ¶¶ 9, 18; Henderson Dep. at 135-40; Doc. 53, Ex. 15]. Plaintiff Medearis likewise testified

AO 72A
(Rev.8/82)

that as a Store Manager, he was required to perform tasks such as lifting, bending, and squatting. [Pla. Dep. at 46].

Plaintiff points out that Jihad "Joe" Jomaa, a former CVS Store Manager, testified that a Store Manager can perform the job without lifting more than 10 pounds and that almost all of the job's duties could be performed on light duty. [Doc. 53 at 6; Jomaa Dep. at 33-34, 55-56]. However, Jomaa clarified that if a Store Manager was unable to lift more than 10 pounds, CVS would have to hire more people to perform the duties normally performed by the Manager. [Jomaa Dep. at 33-34]. Like Plaintiff, Jomaa testified that he unloaded delivery trucks because that was part of the Store Manager's duties. [Jomaa Dep. at 16]. Rather than supporting Plaintiff's argument, Jomaa's testimony actually provides support for Defendant's contention that lifting more than 10 pounds was an essential function of a Store Manager.

Jomaa testified that for a time, he retained the title of Store Manager while working light duty and often sat in a chair while greeting customers and performing paperwork. [Doc. 53 at 10; Jomaa Dep. at 19-22]. While Jomaa was on light duty, he did not perform any lifting, pushing, or pulling. [Id.]. But Jomaa, unlike Plaintiff Medearis, suffered a work-related injury. [Jomaa Dep. at 14; Pla. Dep. at 205-06]. Jomaa injured his leg and back while unloading a truck. [Jomaa Dep. at 14]. On two

21

separate occasions, Jomaa worked for six weeks on light duty under CVS' Transitional Duty Program related to his workers' compensation claims and was paid through the workers' compensation insurance program. [Jomaa Dep. at 14-24; Henderson Dec. ¶ 6; Henderson Dep. at 148-56]. After six weeks of being on light duty, Jomaa was provided with a leave of absence because he could not perform the functions of a Store Manager. [Id.]. There is no evidence that CVS offered light duty work for employees who did not suffer a work-related injury or who were not in the Transitional Duty Program related to workers' compensation claims on a temporary basis. See Ivey v. First Quality Retail Service, 490 Fed. Appx. 281, 286 (11th Cir. 2012) ("The undisputed evidence shows that First Quality only offered employees light duty work on a temporary basis for those employees with work-related injuries who were expected to recover.").

In support of his response to Defendant's summary judgment motion, Plaintiff cites to the Eleventh Circuit's decision in Calvo v. Walgreens Corp., 340 Fed. Appx. 618 (11th Cir. 2009), which involved an ADA failure to accommodate claim. The plaintiff in Calvo had been an assistant manager at Walgreens, and the court addressed the issue of whether physically demanding tasks were essential functions of the position. Id. at 622-23. After the plaintiff was injured in an automobile accident, her

22

physician found that she could not lift, carry, push or pull anything over five pounds because her left arm and hand were non-functional and were in a permanent brace. Id. at 620. The Calvo court found that "there is enough evidence to create a genuine issue of material fact about whether lifting, carrying, and pushing more than five pounds at a time is an 'essential function' of an assistant manager at Walgreens." Id. at 623. One of the most important facts noted by the court in making its finding was that the plaintiff's manager believed that the plaintiff had performed her assistant manager job "fine" for a period of four years despite being unable to use her left arm. Id. Similar facts are not present in the case before the court.

There is no evidence that Plaintiff or other CVS Store Managers were able to perform the job for an extended period of time without being able to lift more than 10 pounds. And as noted *supra*, even Plaintiff acknowledged that as a Store Manager, he was regularly required to lift, bend, squat, unload delivery trucks, and distribute merchandise to stocking shelves. The court finds that in light of the record evidence, these physically demanding duties were essential functions of the Store Manager position at CVS. [Pla. Dep. at 73-80; Henderson Dep. at 33-36; Doc. 53, Ex. 7; Jomaa Dep. at 33-34].

23

As previously discussed, in order for Plaintiff to establish that he is a "qualified individual," he must show that he can perform the essential functions of his Store Manager job, with or without a reasonable accommodation. See 42 U.S.C.A. § 12111(8); D'Angelo, 422 F.3d at 1229. During the relevant period from October through November 2011, Plaintiff was unable to perform the essential functions of the job without an accommodation because he was limited to lifting less than 10 pounds. As a result, Plaintiff must offer evidence showing that he could perform the Store Manager's essential functions with a reasonable accommodation. See Ivey, 490 Fed. Appx. at 286. "The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of [his] job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable." Earl v. Mervyns, Inc., 207 F.3d 1361, 1367 (11th Cir. 2000) (citing Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997)). When Plaintiff Medearis made his accommodation request to Defendant CVS on October 1, 2011, he informed the company that he needed three separate accommodations: (1) 50 extra operating hours per week; (2) palletized truck deliveries; and (3) a flexible work schedule. [Pla. Dep. at 204-05; Doc. 53, Ex. 3]. Plaintiff testified that he required all of these accommodations. [Id.].

24

The court finds that the accommodations needed by Plaintiff were not reasonable due to the requirement that Defendant must provide him with other employees to work an additional 50 hours per week. [DSMF ¶ 1; PSMF ¶ 1; Henderson Dep. at 19-21; Doc. 53, Ex. 3]. Bob Henderson, a CVS Human Resources Business Partner, testified that he viewed Plaintiff's request for 50 extra hours per week as "essentially, what he's asking for is someone to do his job." [Henderson Dep. at 21]. "As a matter of law, an employer is not required, under the guise of a reasonable accommodation, to hire another employee to perform essential functions of the ADA plaintiff's job." Johnson v. Georgia Dep't of Human Resources, 983 F. Supp. 1464, 1474 n.11 (N.D. Ga. 1996). The ADA "was not intended to force the employer to subsidize disabled people by keeping them in their paid positions while still having to hire someone else to actually do their jobs." Bivins v. Bruno's, Inc., 953 F. Supp. 1558, 1562 (M.D. Ga. 1997), aff'd, 247 F.3d 245 (11th Cir. 2001). Defendant CVS was not obligated to accommodate Plaintiff's disability by paying other employees to perform some of the essential functions of the Store Manager position. "[B]ecause [Plaintiff's] requested accommodation would eliminate an essential function of his job, it was not reasonable and was therefore not required under the statute." Anderson, 379 Fed. Appx. at 928.

25

In summary, Plaintiff Medearis has failed to show that during the relevant time period from October through November 2011, he could have performed the essential functions of the Store Manager job either with or without a reasonable accommodation. See D'Angelo, 422 F.3d at 1229. Essential functions of the Store Manager position include unloading delivery trucks and moving merchandise onto store shelves. Plaintiff could not lift more than 10 pounds, and in order for these duties to be completed, it was necessary for other employees to work a large number of additional hours each week.[6] [Pla. Dep. at 204-05; Doc. 53, Ex. 3; Jomaa Dep. at 33-34]. The accommodation that Plaintiff required was not reasonable. Because Plaintiff has failed to show that he was capable of performing the essential functions of the Store Manager job, even with a reasonable accommodation, he is not a "qualified individual" under the ADA and he cannot establish a *prima facie* case of failure to accommodate. See Holly, 492 F.3d at 1256. Summary judgment, therefore, is warranted on his failure to accommodate claim.

_____

[6]As noted *supra*, Plaintiff testified that he required all three accommodations listed in his October 2011 accommodation request: 50 extra operating hours per week, palletized truck deliveries, and a flexible work schedule. [Pla. Dep. at 204-05; Doc. 53, Ex. 3]. Because the extra operating hours requirement was not reasonable, the court need not address the reasonableness of the other two requirements. The same is true with regard to the other possible accommodation options discussed by Plaintiff in his response brief. [Pla. Dep. at 204-05; Doc. 53 at 12-18].

AO 72A

(Rev.8/82)

Assuming *arguendo* that Plaintiff were able to show that he is a qualified individual, the court nevertheless would find that Defendant is entitled to summary judgment on Plaintiff's claim. As noted *supra*, the final element of a *prima facie* case of disability discrimination requires the plaintiff to show that his employer failed to provide him with a reasonable accommodation. <u>See</u> <u>Greenberg</u>, 498 F.3d at 1263; 42 U.S.C. § 12112(b)(5)(A). Plaintiff is unable to establish this *prima facie* element. On October 18, 2011, Plaintiff went on FMLA leave. [Pla. Dep. at 211, 292; Pla. Resp. to DSMF ¶¶ 15, 16, 18]. That same day, CVS mailed Plaintiff a "reasonable accommodation questionnaire" which was completed by Plaintiff's doctor and provided to CVS on November 6, 2011. [PSMF ¶ 13]. In the form, Plaintiff's doctor indicated that if part-time, light duty work was not available, then the physician recommended a short term leave of absence. [Doc. 53, Ex. 11]. Plaintiff was on FMLA leave from October 18 until November 29, 2011, when he returned to his Store Manager position. [Pla. Dep. at 211, 292; Pla. Resp. to DSMF ¶¶ 15, 16, 18].

"[U]nder the ADA a qualified individual with a disability is not entitled to the accommodation of [his] choice, but only to a reasonable accommodation." <u>Stewart</u>, 117 F.3d at 1286 (citation and internal quotation marks omitted). The Eleventh Circuit has recognized that a short term leave of absence may constitute a reasonable

accommodation.  See Moore v. Accenture, LLP, 2007 WL 3313152, at *3-4 (11th Cir.

November 9, 2007); Wood v. Green, 323 F.3d 1309, 1314 (11th Cir.), cert. denied, 124

S. Ct. 467 (2003); see also Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1226 (11th

Cir. 1997) (holding that a "reasonable accommodation is by its terms most logically

construed as that which, presently, or in the immediate future, enables the employee

to perform the essential functions of the job in question").   One of the options

recommended by Plaintiff's doctor was for him to be on short term leave.  The fact that

the doctor's recommendation was consistent with Defendant CVS' decision to allow

Plaintiff to go on FMLA leave supports a finding that Defendant provided a reasonable

accommodation.[7]  See Moore, 2007 WL 3313152, at *3 n.3.  For these reasons, the

court finds that even if Plaintiff were able to show that he is a qualified individual

under the ADA, he still could not establish a *prima facie* case of failure to

accommodate because he is unable to show that Defendant failed to provide him with

---

[7]In Plaintiff's response brief, he contends that because he went on a leave of absence pursuant to the FMLA rather than "company leave," the leave was not a reasonable accommodation.  [Doc. 53 at 18-19].  This contention is unfounded. Plaintiff has not asserted a claim based on the FMLA, and he has failed to explain how being granted FMLA leave by Defendant CVS was not reasonable.  See Santacrose v. CSX Transp., Inc., 288 Fed. Appx. 655, 657 (11th Cir. 2008) (finding that the employer "reasonably accommodated [the plaintiff's] disability by allowing him to use his company sick leave and FMLA leave to avoid working overtime shifts").

AO 72A
(Rev.8/82)

a reasonable accommodation.  See Santacrose, 288 Fed. Appx. at 657 (finding that the employer provided the plaintiff with a reasonable accommodation when it allowed him to go on a leave of absence, even though the plaintiff "was not given the precise accommodation he requested (an eight-hour restriction)").  Accordingly, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 48] be **GRANTED** on Plaintiff's claim that Defendant violated the ADA by failing to provide him with a reasonable accommodation from October through November 2011.

Although unclear, it appears from Plaintiff's testimony that his ADA failure to accommodate claim is based not only on Defendant's actions from October through November 2011, but from November 29, 2011, when Plaintiff returned to work, through his second leave of absence which began in March 2012.  [Pla. Dep. at 226-27].  Defendant moved for summary judgment on any claim that Plaintiff may have asserted based on CVS' conduct after November 29, 2011, but Plaintiff made no response in opposition to Defendant's motion.  [Doc. 48 at 19-21; Doc. 53].  When Plaintiff returned from a leave of absence around November 29, 2011, he had a note from his physician recommending that he return slowly to his regular duties, that lifting be limited to no more than 15 pounds, that standing be limited to no more than four hours at a time, and that he be permitted to take periodic breaks as needed.  [Pla.

29

Dep. at 225-26; Doc. 50-1 at 33; DSMF ¶ 11]. Plaintiff also told District Manager Neal Lindler that he "still had some restrictions" and that his doctor still "wanted [him] to be on some form of light duty to see how [he] work[s] on the medication. . . ." [DSMF ¶ 12; Pla. Dep. at 292-93]. Plaintiff testified that when he talked to Lindler about the restrictions, Lindler "may have made a reference to, I'll see if we can do that." [Pla. Dep. at 300].

An employer may need "to initiate an informal, interactive process" with the employee to identify his limitations and possible accommodations. 29 C.F.R. § 1630.2(o)(3). However, "[t]he plaintiff bears the burden of identifying a reasonable accommodation that would allow a qualified individual to perform the job, and an employer is not required to accommodate an employee in any manner in which the employee desires." Gilliard v. Georgia Dep't of Corrections, 500 Fed. Appx. 860, 868 (11th Cir. 2012) (citing Stewart, 117 F.3d at 1285-86). The Eleventh Circuit has held that "where the employee failed to identify a reasonable accommodation, the employer had no affirmative duty to engage in an interactive process." Knowles v. Sheriff, 460 Fed. Appx. 833, 835 (11th Cir. 2012) (citation and internal quotation marks omitted). "An accommodation is reasonable . . . only if it allows the employee to perform the essential functions of the job." Earl, 207 F.3d at 1365.

In the present case, Plaintiff Medearis has not pointed to evidence showing that at any time after he returned to work on November 29, 2011, he identified an accommodation that would have allowed him to perform the essential functions of the job. [Doc. 53]. As discussed *supra*, the essential functions of a CVS Store Manager included unloading delivery trucks and distributing merchandise to stocking shelves. [Pla. Dep. at 74-78; Jomaa Dep. at 33-34]. Plaintiff did not identify a reasonable accommodation that would have allowed him to perform these duties. As a result, Defendant did not have an affirmative duty to engage in an interactive process. See Knowles, 460 Fed. Appx. at 835. Moreover, Plaintiff has not cited to evidence showing that Defendant CVS obstructed the interactive process or that the company failed to make reasonable efforts to communicate with Plaintiff. See Gilliard, 500 Fed. Appx. at 868.

Plaintiff's response brief does not make any mention of Defendant's alleged failure to accommodate his disability after he returned to work on November 29, 2011. Defendant notes that Plaintiff's "response brief confirms he no longer challenges CVS's post-November 2011 [conduct] as the basis for his failure to accommodate claim." [Doc. 54 at 1-2; Doc. 53 at 5-18]. In light of these facts, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 48] be

31

**GRANTED** on Plaintiff's ADA failure to accommodate claim to the extent it is based on Defendant's conduct after November 2011.

### B. Title VII Racial Discrimination Claim

Plaintiff Medearis asserts that Defendant CVS subjected him to discrimination on the basis of race in violation of Title VII by requiring him to "work under much stricter and far less equal terms and conditions." [Doc. 1]. Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ." 42 U.S.C. § 2000e-2(a)(1). In a disparate treatment action, the plaintiff carries the burden of demonstrating that the defendant has unlawfully discriminated against him. See Texas Dep't of Community Affairs v. Burdine, 101 S. Ct. 1089, 1093-95 (1981). "A plaintiff may prove a claim of intentional discrimination through direct evidence, circumstantial evidence, or through statistical proof." Rioux v. City of Atlanta, Georgia, 520 F.3d 1269, 1274 (11th Cir. 2008). In the present case, Plaintiff relies on circumstantial evidence to support his employment discrimination claim. [Doc. 53 at 19-27]. The court, therefore, will use the McDonnell Douglas framework to evaluate his claim. Under this framework, the allocation of burdens and order of presentation and proof are as follows: (1) the plaintiff has the burden of

32

proving a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the action taken against the employee; and (3) should the defendant carry this burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by defendant was a pretext for discrimination. <u>See McDonnell Douglas</u>, 93 S. Ct. at 1824-25.

To establish a *prima facie* case of racially disparate treatment, Plaintiff must prove that: (1) he is a member of a protected class; (2) he was subjected to an adverse job action; (3) he was qualified to do the job; and (4) his employer treated similarly situated employees outside his classification more favorably. <u>See Lathem v. Dep't of Children and Youth Servs.</u>, 172 F.3d 786, 792 (11th Cir. 1999); <u>Jones v. Bessemer Carraway Med. Ctr.</u>, 137 F.3d 1306, 1310 (11th Cir.), <u>partial superseding opinion on denial of rehearing</u>, 151 F.3d 1321 (11th Cir. 1998); <u>Holifield v. Reno</u>, 115 F.3d 1555, 1562 (11th Cir. 1997). Plaintiff Medearis is able to establish the first and third *prima facie* elements because he is African-American and was qualified for his position as Store Manager. Defendant makes no argument to the contrary. [Doc. 48].

To satisfy the second *prima facie* element, Plaintiff must show that he was subjected to an employment action that was materially adverse. "[O]nly those

33

employment actions that result in 'a *serious and material* change in the terms, conditions, or privileges of employment' will suffice." <u>Howard v. Walgreen Co.</u>, 605 F.3d 1239, 1245 (11th Cir. 2010) (quoting <u>Davis v. Town of Lake Park, Florida</u>, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original)). "'Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.'" <u>Id.</u> (quoting <u>Davis</u>, 245 F.3d at 1239).

Plaintiff argues that he was subjected to an adverse employment action when Neal Lindler, his District Manager, budgeted fewer employee hours for Plaintiff's store. [Doc. 53 at 21]. Plaintiff alleges that as a result of the reduced budgeting hours, the performance of his store suffered. [<u>Id.</u>]. Plaintiff writes, "Mr. Lindler then started writing Mr. Medearis up and threatening to fire him." [<u>Id.</u>]. Plaintiff testified that at some point, Lindler laughed at Plaintiff and said that he was going to fire Plaintiff within a year. [Pla. Dep. at 182, 350]. This is the full extent of Plaintiff's argument in support of his claim that Defendant subjected him to an adverse employment action, and it is not sufficient.

With regard to Lindler's decision to budget fewer employee hours for Plaintiff's store, the court finds that Plaintiff has failed to show that this constituted a materially

34

adverse action. Plaintiff's job duties and workload may have changed as a result of the decreased employee hours, and, as Plaintiff alleges, the performance of the store may have suffered. However, "Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions." Davis, 245 F.3d at 1244 (citing Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (internal quotation marks omitted); Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) (stressing that "federal courts do not sit to second-guess the business judgment of employers")). "Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities." Id. As a result, courts are "reluctant to hold that changes in job duties amount to adverse employment action when unaccompanied by any tangible harm." Id. (citing Mungin v. Katten Muchin & Zavis, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (holding that "changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes")). Plaintiff is unable to show that he suffered a tangible harm as a result of Lindler's decision regarding employee hours at Plaintiff's store.

AO 72A

(Rev.8/82)

Plaintiff alleges that he was issued written reprimands ("written up") by Lindler when his store's performance suffered. [Doc. 53 at 21; Pla. Dep. at 182]. But there is no evidence that Plaintiff suffered any tangible repercussions as a result of the reprimands. The Eleventh Circuit, like most courts that have addressed the issue, has found that "criticisms of an employee's job performance–written or oral–that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit." Davis, 245 F.3d at 1241. The reason behind this is clear:

> Employer criticism, like employer praise, is an ordinary and appropriate feature of the workplace. Expanding the scope of Title VII to permit discrimination lawsuits predicated only on unwelcome day-to-day critiques and assertedly unjustified negative evaluations would threaten the flow of communication between employees and supervisors and limit an employer's ability to maintain and improve job performance. Federal courts ought not be put in the position of monitoring and second-guessing the feedback that an employer gives, and should be encouraged to give, an employee.

Id. at 1242. In Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1283-84 (11th Cir. 1999) (per curiam), the court addressed the issue of whether a written warning and a decision to classify the plaintiff's absences as AWOL were adverse actions. Because the "plaintiff did not suffer any repercussions" from the classification or the memorandum, which "expressed concern with plaintiff's absences and warned of possible ramifications," the court found that they were not materially adverse. Id.

36

In the present case, Lindler's written reprimands did not result in a demotion, suspension, termination, or reduction in salary. Plaintiff alleges that Lindler laughed at him and threatened to terminate his employment within a year. [Pla. Dep. at 350]. However, numerous courts have concluded that "[v]erbal reprimands and threats of termination do not constitute adverse employment actions." Mistretta v. Volusia County Dep't of Corrections, 61 F. Supp. 2d 1255, 1260 (M.D. Fla. 1999). In Akins v. Fulton County, Georgia, 420 F.3d 1293, 1300-02 (11th Cir. 2005), for example, the Eleventh Circuit held that various acts of verbal and written discipline, including reprimands, negative evaluations, exclusion from meetings, and threats of termination and suspension without pay, did not constitute adverse employment actions. Accord Tatroe v. Cobb County, Georgia, 2006 WL 559437 (N.D. Ga. March 7, 2006).

For all these reasons, the court finds that Plaintiff has failed to offer evidence which would permit a reasonable jury to conclude that Plaintiff was subjected to an adverse employment action. Because Plaintiff Medearis is unable to establish a *prima facie* case of disparate treatment, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 48] be **GRANTED** on Plaintiff's Title VII racial discrimination claim.

### C.     Title VII Constructive Discharge Claim

37

Plaintiff alleges that he was constructively discharged by Defendant CVS on the basis of his race.[8]  [Doc. 53 at 28-30].  "To prove constructive discharge, the employee[] must demonstrate that [his] working conditions were so intolerable that a reasonable person in [his] position would be compelled to resign."  Kilgore v. Thompson & Brock Management, Inc., 93 F.3d 752, 754 (11th Cir. 1996) (citation and internal quotation marks omitted); see also Wardwell v. School Board, 786 F.2d 1554, 1557 (11th Cir. 1986).  A finding of constructive discharge is appropriate only where a reasonable person would have found the conditions of employment intolerable.  See Hill v. Winn-Dixie Stores, 934 F.2d 1518, 1527 (11th Cir. 1991).  "[H]urt feelings are insufficient as proof of constructive discharge."  Hellums v. Webster Industries, Inc., 97 F. Supp. 2d 1287, 1298 (M.D. Ala. 1998) (citing Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536 (11th Cir. 1987)).

On January 19, 2012, Plaintiff emailed an internal complaint to CVS Area Vice President David Purdy.  [Pla. Dep. at 305-06, Ex. 9].  Plaintiff alleged in the email that he was "being harassed by several members of field management . . . because of [his]

---

[8]The court will assume for purposes of evaluating Defendant's summary judgment motion that Plaintiff has asserted a claim for constructive discharge.  The Joint Preliminary Report and Discovery Plan included constructive discharge as an issue to be tried and both parties have briefed the issue.  [Doc. 12 at 4-5; Doc. 48 at 23-24; Doc. 53 at 27-29; Doc. 54 at 13-14].

AO 72A
(Rev.8/82)

race and disability (Rheumatoid Arthritis)." [Id.].  Plaintiff alleged *inter alia* that his store hours were cut, that he was "often treated with hostility on conference calls," and that he was issued a written warning.  [Pla. Dep. at 305-06, Ex. 9].  In support of his constructive discharge claim, Plaintiff cites to the fact that Defendant CVS investigated his complaint, but, according to Plaintiff, the investigation was not sufficient.  [Doc. 53 at 28, Ex. 14; Pla. Dep. at 180-81, 366-68].  Plaintiff also cites to the incidents when District Manager Neal Lindler laughed at Plaintiff, issued him a written warning, and told him that he would be fired within a year.  [Doc. 53 at 29].  Plaintiff went on leave in April 2012 and informed Lindler in an email that he would "not be able to return to work at this time according to [his] doctor's orders."  [DSMF ¶ 19; Pla. Dep. at 352, 354-55, Ex. 13].  In the email to Lindler, Plaintiff also wrote, "I have been suffering from depression and anxiety due to the ongoing harassment I have been receiving from you."  [Pla. Dep. at 352, 354-55, Ex. 13].  In September 2012, while on short term disability, Plaintiff submitted his resignation.  [Henderson Dec. ¶ 3, Ex. A; Pla. Dep. at 109-10].

AO 72A
(Rev.8/82)

For a number of reasons, the court finds that Plaintiff has failed to offer sufficient evidence to support a constructive discharge claim.[9] "'To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minium required to prove a hostile working environment.'" Maddin v. GTE of Fla., Inc., 33 F. Supp. 2d 1027, 1033 (M.D. Fla. 1999) (quoting Landgraf v. USI Film Products, 968 F.2d 427, 430 (5th Cir. 1992)). A hostile work environment claim can only be sustained when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' . . . that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 370 (1993)

---

[9]Defendant makes a brief argument in a footnote that any of Plaintiff's claims based on events that occurred after he filed his EEOC on January 13, 2012, are barred because Plaintiff did not file a subsequent charge. [Doc. 48 at 23 n.24; DSMF ¶ 17; Pla. Dep. at 339, 341, Ex. 1]. "Before filing a Title VII action in court, a plaintiff first must file a charge of discrimination with the EEOC." Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1303 (N.D. Ga. 2009) (citing Gregory v. Georgia Dep't of Human Resources, 355 F.3d 1277, 1279 (11th Cir. 2004)). The Eleventh Circuit has held that a "'plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Gregory, 355 F.3d at 1280 (citations omitted). Plaintiff alleged in the January 2012 charge that he had been subjected to discrimination based on race and disability. [Pla. Dep. at 339, 341, Ex. 1]. Defendant has failed to show that the scope of an investigation into these allegations would not be expected to include his Title VII claim for racially discriminatory constructive discharge.

(quoting <u>Meritor Savings Bank, FSB v. Vinson</u>, 106 S. Ct. 2399, 2405 (1986)). Plaintiff is unable to show that he was subjected to a hostile work environment. As a result, he cannot meet the higher burden necessary to prove constructive discharge.

Most of Plaintiff's complaints are about discretionary employment decisions made by CVS management that did not result in a tangible harm, such as determining the number of store hours, issuing written warnings, and conducting an investigation. Plaintiff's other complaints are about being "treated with hostility" during conference calls, being laughed at by Lindler on one occasion, and being told by Lindler that he would be fired within a year. [Doc. 53 at 29]. These actions do not approach the level of severity that courts have found necessary to bring even a hostile work environment claim. <u>See</u> <u>Barrow v. Georgia Pacific Corp.</u>, 144 Fed. Appx. 54, 57-58 (11th Cir. 2005) (holding that plaintiffs had failed to establish a racially hostile work environment even though racial slurs were sporadically directed at one of the plaintiffs). Moreover, at the time Plaintiff submitted his resignation, he had been on leave for approximately five months. [Pla. Dep. at 352, 354-55, Ex. 13; Henderson Dec. ¶ 3, Ex. A; Pla. Dep. at 109-10]. Plaintiff has failed to show that a reasonable person would have found the conditions of his employment intolerable; accordingly, a finding of constructive discharge is not warranted. <u>See</u> <u>Hill</u>, 934 F.2d at 1527.

AO 72A

(Rev.8/82)

Title VII "does not set forth 'a general civility code for the American workplace.'" <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S. Ct. 2405, 2415 (2006) (quoting <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 118 S. Ct. 998, 1002-03 (1998)). Plaintiff "has not established even that the harassment was severe or pervasive enough to constitute a hostile working environment; *a fortiori*, [he] has not shown that [his] working conditions were so intolerable that [he] was forced to resign." <u>Maddin</u>, 33 F. Supp. 2d at 1033. Moreover, a finding of constructive discharge is inappropriate when, as in the present case, the underlying claims of discrimination are not proven. See <u>Blevins v. Helig-Meyers Corp.</u>, 52 F. Supp. 2d 1337, 1351 (M.D. Ala. 1998). For all these reasons, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 48] be **GRANTED** on Plaintiff's Title VII constructive discharge claim.

**IV.    Conclusion**

AO 72A

(Rev.8/82)

Based on the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that the motion [Doc. 48] for summary judgment filed by Defendant CVS be **GRANTED** on all claims asserted by Plaintiff Kirk Medearis.

All pretrial matters have been concluded with the issuance of this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1), this Court's Local Rule 72.1, and Standing Order 14-01 (N.D. Ga. August 15, 2014). The Clerk, therefore, is **DIRECTED** to terminate the reference to the Magistrate Judge.

**SO RECOMMENDED** this 29th day of September, 2014.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

43

AO 72A

(Rev.8/82)