# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

KIRK MEDEARIS ⟩
⟩
⟩
      **Plaintiff,** ⟩  **CASE NO. 1:13-CV-1847-TWT-**
vs. ⟩  **JFK**
⟩
CVS PHARMACY ⟩
      **Defendant.** ⟩
⟩
⟩
⟩
_____

## PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## STANDARD OF REVIEW

The standard for district court review of a magistrate judge's Report & Recommendation is governed by Section 636(b)(1)(C) and Rule 72(b) and is different from the standard of review applicable to a magistrate judge's order. Within 14 days after being served with a copy of the Report & Recommendation, a party may serve and file written objections to such proposed findings and recommendations. 28 U.S.C. § 636(b) (1)(C). The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made." Id. "The judge of the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id. "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Id. Rules 72(b)(2) & (3) are in accord with the foregoing.

The Eleventh Circuit has held a district court may, in its discretion, consider an objecting party's legal argument when that argument was not presented before the magistrate judge. See United States v. Franklin, 694 F.3d 1, 6 (11th Cir. 2012); see also Stephens v. Tolbert, 471 F.3d 1173, 1174, 1177 (11th Cir. 2006).

## **FACTUAL OBJECTIONS**

### 1) **The magistrate judge used the wrong job description to evaluate the essential functions of the manager's position.**

Mr. Medearis properly cited the job description Defendant had him to sign. See [Doc. 53-4 p. 8 ¶ 25]. Mr. Medearis properly cited this job description See [Doc. 53-5 p. 4 ¶ 9]. Mr. Medearis properly cited to the job description advertised to the public. See [Doc. 53-5 p. 4 ¶ 9]. The magistrate judge should have used the job description cited by Mr. Medearis.

**2) The magistrate judge left out key testimony from Mr. Medearis deposition by only relying on DSMF ¶ 11.**

The magistrate judge cites Mr. Medearis testimony from DSMF ¶ 11. However, Mr. Medearis properly denied these facts. <u>See</u> [Doc. 53-5 p. 5 ¶ 11]. Mr. Medearis properly cited the sections of his deposition relevant to the facts of his testimony. <u>See</u> [Doc. 53-5 p. 5 ¶ 11]. The magistrate judge was required by law to use the sections added by Mr. Medearis. <u>See</u> Fed. R. Civ. P. 32 (a) (6). Not relying on the additional sections takes Mr. Medearis' testimony out of context. In the interest of fairness, the magistrate judge should not have left out the additional sections.

**3) The magistrate judge left out key testimony from Mr. Medearis deposition by only relying on DSMF ¶ 10.**

Mr. Medearis properly denied Defendant's statement of facts. <u>See</u> [Doc. 53-5 p. 4 ¶ 10]. Mr. Medearis properly cited the sections of his deposition relevant to the facts of his testimony. <u>See</u> [Doc. 53-5

p. 5 ¶ 11]. The magistrate judge was required by law to use the sections added by Mr. Medearis. <u>See</u> Fed. R. Civ. P. 32 (a) (6). Not relying on the additional sections takes Mr. Medearis' testimony out of context. In the interest of fairness, the magistrate judge should not have left out the additional sections.

### 4) The magistrate judge left out key testimony from Mr. Medearis deposition by only relying on DSMF ¶ 19.

Mr. Medearis properly denied Defendant's statement of facts. <u>See</u> [Doc. 53-5 p. 6 ¶ 19]. Mr. Medearis properly cited the sections of his deposition relevant to the facts of his testimony. <u>See</u> [Doc. 53-5 p. 6 ¶ 19]. The magistrate judge was required by law to use the sections added by Mr. Medearis. <u>See</u> Fed. R. Civ. P. 32 (a) (6). Not relying on the additional sections takes Mr. Medearis' testimony out of context. In the interest of fairness, the magistrate judge should not have left out the additional sections.

### 5) The magistrate judge left out key testimony from PSMF ¶¶ 6, 7, 8, 11, 12, 16, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 33.

The magistrate judge left out key facts from Mr. Medearis' statement of facts. Mr. Medearis properly cited to supporting affidavits, interrogatories and documents. These facts were not listed in the magistrate judge's report

and recommendation. The facts from Plaintiff's Statement of Facts were relevant. <u>See</u> PSMF ¶¶ 6, 7, 8, 11, 12, 16, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 33.

<u>**ARGUMENTS AND CITATION TO AUTHORITIES**</u>

**I.     THERE ARE MATERIAL ISSUES OF FACTS FOR MR. MEDEARIS' ADA CLAIM.**

**a) Lifting 10 lbs. is not an essential function of Mr. Medearis' job.**

The magistrate judge used the wrong job description to analyze the essential functions of Mr. Medearis' job.  The magistrate judge should have used the job description cited by Mr. Medearis. On March 17, 2011, Mr. Medearis signs his job description stating, "I have reviewed and understand all the functions listed below. [Exhibit 16 p. 2] [Henderson Dep. at 142:22-143:4, December 17, 2013] The job description list 26 requirements for a store manager. The ability to lift more than 10 lbs. is not part of the job description. CVS advertises the store manager position in 10 different cities throughout Georgia. The position summary, required qualification, and preferred qualifications says nothing about lifting more

than 10lbs. [Mondy Decl. at ¶¶ 1-2] [Exhibits 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27] [Henderson Dep. at 165:1-189:9, December 17, 2013]. The jury should decide whether the job description cited by Mr. Medearis is the correct job description.

Mr. Jomaa testifies that a store manager can perform the job without lifting more than 10lbs. [Jomaa Dep. at 33:22-25, December 18, 2013] [Jomaa Dep. at 34:14-23, December 18, 2013]. Mr. Jomaa highlighted in blue all the job duties he could perform on light duty as a manager. Mr. Jomaa highlighted 22 out of the 23 tasks. [Jomaa Exhibit 1] [Jomaa Dep. at 55:20-56:2, December 18, 2013]. CVS posted a job position for a clerk in Georgia. The job position for the clerk clearly states that stocking and lifting 35lbs is an "essential function" for the clerk position. [Mondy Decl. at ¶¶ 1-2] [Exhibit 33 for impeachment purposes only]. Unlike the clerk's position, the store manager position does not have any such requirement. [Mondy Decl. at ¶¶ 1-46] [Exhibits 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27] [Henderson Dep. at 159:19-181:14, December 17, 2013].

Most importantly, CVS does not know "the amount of time spent on the job performing the function." [Henderson Dep. at 51:13-24, December

17, 2013]  See Haysman, 893 F. Supp. at. 1101. Mr. Medearis testifies that most of his functions are administrative.  [Medearis Decl. at ¶¶ 2-25]. Therefore, unloading 10 lbs. is not an essential function for a store manager.

### a) Unloading trucks is not an essential function for a store manager.

CVS argues that unloading the truck is an essential function for a store manager. [Exhibit 2 p. 24]. CVS does not state any facts supporting its argument. CVS just simply makes a conclusory statement. [Exhibit 2 p. 24]. CVS incorporated 500 pages of documents in support of its conclusory statement. However, when CVS is forced to explain how these documents support its conclusory statement, CVS just withdraws the documents in support of its conclusory statements. [Exhibit 30 p. 22]. CVS has made a prior inconsistent statements by withdrawing the documents. A reasonable fact finder can conclude that CVS is speaking untruthfully.

In support of his argument, Mr. Medearis reincorporates the reasons why lifting more than10 lbs. is not an essential function as if stated herein. Additionally, Mr. Medearis points out that unloading the truck happens once a week. [Henderson Dep. at 209:14-17, December 17, 2013] [Medearis Dep. at 77:16-18, November 15, 2013] [Jomaa Dep. at 43:13-44:8, December 18, 2013].

Mr. Medearis testifies that unloading the truck could take only an hour. [Medearis Dep. at 77:19-24, November 15, 2013]. CVS does not know how long it takes to unload a truck. [Henderson Dep. at 214:4-13, December 17, 2013]. CVS also admits that Mr. Medearis could get other employees to unload the truck. [Henderson Dep. at 215:15-216:02, December 17, 2013]. The job description cited by CVS does not say anything about unloading trucks. [Exhibit 15]. The job description CVS had Mr. Medearis to sign does not say anything about unloading trucks. [Exhibit 16]. Unloading trucks is simply not an essential function for a store manager.

b) **Not standing more than an hour at a time is not an essential function for a store manager.**

CVS argues that standing more than an hour at a time is an essential function for a store manager. [Exhibit 2 p. 23]. CVS does not state any facts supporting its argument. CVS just simply makes a conclusory statement. [Exhibit 2 p. 23]. CVS incorporated 500 pages of documents in support of its conclusory statement. However, when CVS is forced to explain how these documents support its conclusory statement, CVS just withdraws the documents in support of its conclusory statements. [Exhibit 30 p. 20]. CVS has made a prior inconsistent statement by withdrawing the documents. A reasonable fact finder can conclude CVS is speaking untruthfully.

CVS admits that it doesn't know how many hours a day a manager spends standing up. [Henderson Dep. at 219:13-14, December 17, 2013]. CVS doesn't know how many hours a manager spends stocking shelves (a task that would require standing). [Henderson Dep. at 219:17-25, December 17, 2013].

Mr. Jomaa highlighted in blue all the functions of a store manager he could perform while on light duty. [Jomaa Exhibit 1] [Jomaa Dep. at 55:20-56:2, December 18, 2013]. Mr. Jomaa was allowed to sit in a chair while on light duty. [Jomaa Dep. at 21:7-23, December 18, 2013]. Mr. Jomaa keep his title as store manager while on light duty. [Jomaa Dep. at 19:16-21, December 18, 2013]. Mr. Jomaa's testimony proves that standing more than an hour at a time is not an essential function for a store manager.

The job description CVS had Mr. Medearis to sign says nothing about standing. [Exhibit 16]. Mr. Medearis testifies that he could perform his job duties without standing more than an hour at a time. [Medearis Decl. at ¶¶ 2-25]. It is clear that standing for more than an hour at a time is not an essential function for a manager's position. . [Mondy Decl. at ¶¶ 1-2] [Exhibits 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27] [Henderson Dep. at 159:19-181:14, December 17, 2013].

c) **The magistrate judge should have analyzed whether providing Mr. Medearis his reasonable accommodation would have caused an undue hardship.**

The magistrate judge erred by not analyzing whether providing Mr. Medearis his reasonable accommodations would have caused an undue hardship.

The term "undue hardship" means an action requiring significant difficulty or expense, when considered in light of the factors set forth in subparagraph (B). <u>See</u> 42 U.S.C. § 12111(10) (B). Section (B) list the factors to be considered which are:

(i)  the nature and cost of the accommodation needed under this chapter;

(ii)  the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;

(iii)  the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

(iv)  the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness,

> administrative, or fiscal relationship of the facility or
> facilities in question to the covered entity.

See 42 U.S.C. § 12111(10) (B). CVS has failed to state facts which will cause the company an undue hardship. The ADA regulations provide that, in order to determine the appropriate reasonable accommodation:

> it may be necessary for an employer "to initiate an informal,
> interactive process with the individual with a disability in need
> of an accommodation" to identify the person's limitations and
> possible accommodations.

Knowles v. Sheriff, 460 Fed. App'x 833, 835 (11th Cir. 2012) (quoting 29 C.F.R. § 1630.2 (o)(3)).

Mr. Medearis explains his daily duties and tasks while working for CVS. [Medearis Decl. at ¶¶ 2-25]. The following reasonable accommodations would not have caused CVS an undue hardship:

**a) Not lifting more than 10 lbs. would not cause CVS an undue hardship.**

CVS does not know how many items in the store weighs more than ten pounds. [Henderson Dep. at 35:12-36:07, December 17, 2013] [Henderson Dep. at 51:5-12, December 17, 2013] [Exhibit 1 and A]. CVS does not have any documents detailing which items weigh more than ten

pounds. [Henderson Dep. at 36:09-12, December 17, 2013] [Exhibit 1 and A].

CVS does not know how often a store manager has to lift more than 10 pounds. [Henderson Dep. at 51:13-24, December 17, 2013] [Exhibit 1 and A]. CVS does not know how much a cash drawer weighs. [Henderson Dep. at 192:19-193:14, December 17, 2013] [Exhibit 1 and A].

CVS does not know how much items weigh coming off the delivery truck. [Henderson Dep. at 198:23-199:18, December 18, 2013] [Henderson Dep. at 201:11-19, December 13, 2013] [Exhibit 1 and A].

The only consequences of Mr. Medearis not lifting 10lbs is that the clerk would have to lift the item. [Jomaa Dep. at 35:6-10, December 18, 2013]. However, delegating tasks to the clerk is the goal of the store manager. [Exhibit 16]. The job advertisement states the required qualifications for a store manager is a "minimum of 1 year experience in a retail management position." [Exhibit 20]. The job description cited by CVS states the manager's duty is inventory management. The manager "direct employees in the execution of plan-o-grams, merchandising, inventory plans, stocking, organization of deliveries . . . make recommendations for improvement. [Exhibit 15].

CVS argues the store would suffer inadequate management coverage if Mr. Medearis cannot lift more than 10lbs. CVS testifies that the manager goes in the back and retrieves stock for the casher.  [Exhibit 2 p. 10] [Henderson Dep. at 194:6-1951, December 17, 2013]. CVS's testimony can be impeached. The clerk/casher job description clearly states that the clerk stocks the shelves. The clerk also "works out reserve stock." The clerk unload and load rays/cases – 35 pound maximum to a height of 4 feet. [Exhibit 33 for impeachment purposes only].

Furthermore, the store management job description cited by CVS contradicts such argument. The job description has a section called "customer service leadership." Mr. Medearis only has to assist in customer service activities when he is "training employees or dealing with escalated difficult customer service issues." [Exhibit 15]. Such task has nothing to do with lifting 10lbs.

CVS argues the store would suffer significant disruption if Mr. Medearis cannot lift more than 10lbs. CVS claims the cash drawers could weigh over ten pounds. [Exhibit 2 p. 10] [Henderson Dep. at 192:02-192:12, December 17, 2013]. CVS's testimony can be impeached. It's the essential function for the clerk to operate the register, not the manager. [Exhibit 33 for

impeachment purposes only]. The advertisement for the store management position says nothing about operating a cash register or carrying a cash drawer. [Mondy Decl. at ¶¶ 1-2] [Exhibits 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27] [Henderson Dep. at 159:19-181:14, December 17, 2013]. Mr. Medearis testifies that the cash drawer weighs less than 10lbs. [Medearis Decl. at ¶¶ 2-25].

The manager job description cited by CVS contradicts their testimony. The store manager's duty is to "review all weekly and monthly reports and documents pertaining to . . . register transactions." [Exhibit 15]. The job description says nothing about operating a register. [Exhibit 15].

CVS argues that the store will not be fully stocked and in good condition if Mr. Medearis cannot lift more than 10lbs. [Exhibit 2 p. 10] [Henderson Dep. at 198:2-22, December 17, 2013]. CVS's testimony can be impeached. The job description for a clerk clearly states that it's the clerk's job to "stock shelves." [Exhibit 33 for impeachment purposes]. It's the clerk's job to "work out reserve stock." [Exhibit 33 for impeachment purposes]. The cashier has to "unload and load trays/cases – 35 pound maximum to a height of 4 feet." [Exhibit 33 for impeachment purposes].

The job description cited by CVS says the manager "direct employees in the execution of . . . stocking, organization of deliveries. . . ." [Exhibit 15]. The advertisement for a store manager says nothing about stocking merchandise.  [Mondy Decl. at ¶¶ 1-2] [Exhibits 18, 19, 20, 21, 22, 23, 24, 25, 26, and 27] [Henderson Dep. at 159:19-181:14, December 17, 2013].

Mr. Jomaa testified that he budgeted his hours so the casher stocked the shelves. [Jomaa Dep. at 17:1-5, December 18, 2013]. One employee was called a stock person because all he did was stock shelves. [Jomaa Dep. at 46:11-47:9, December 18, 2013].

 CVS admits that Mr. Medearis decides how to utilize employees to stock shelves. [Henderson Dep. at 215:15-216:2, December 17, 2013].

Mr. Medearis testifies how his daily routine was spent at CVS. It's clear that CVS would not suffer an undue hardship by allowing him to not lift more than 10 lbs. [Medearis Decl. at ¶¶ 2-25].

**b) Allowing Mr. Medearis a flexible work schedule for doctor appointments would not cause CVS an undue hardship.**

CVS's own policy states that a flexible work schedule is a reasonable accommodation. The policy states in relevant parts:

> Some examples of reasonable accommodations include changing your work schedule, granting leaves of absence, and allowing for special equipment or services.

[Doc. 48-4 p. 15 of 15] (Emphasis added). Other employees could handle the store while Mr. Medearis visits the doctor. Mr. Jomaa highlighted in yellow the duties an assistant manager could do. [Jomaa Exhibit p-1] [Jomaa Dep. at 49:01-50:14, December 18, 2013]. Mr. Jomaa highlighted in pink the duties a shift supervisors could do. [Jomaa exhibit p-2] [Jomaa Dep. at 50:15-51:13, December 18, 2013]. Mr. Medearis testified that there were other members of store management at his store. [Medearis Dep. at 89:20-90:13, November 15, 2013] [Medearis Decl. at ¶¶ 2-25]. Mr. Medearis could have used those employees. [Medearis Decl. at ¶¶ 2-25]. CVS would not have suffered an undue hardship.

### c) **Allowing palletized trucks would not cause CVS an undue burden.**

CVS has not testified to any facts showing delivering merchandise on palletized trucks would cause undue hardship. CVS just simply argues such facts is based on an inaccurate factual premise.  [Exhibit 2 p. 17]. CVS's own policy states that reasonable accommodation includes ". . . allowing for special equipment or services." [Doc. 48-4 p. 15 of 15] (Emphasis added).

Mr. Medearis testifies that he would not have to do any lifting if the merchandise is stacked on pallets. He could use a pallet jack. [Medearis Decl. at ¶¶ 2-25]. CVS would not have suffered any undue hardship.

### d) Allowing Mr. Medearis to stand no more than an hour at a time would not cause CVS an undue hardship.

Mr. Jomaa testifies that he could perform his store manager duties while on light duty. [Jomaa Exhibit 1] [Jomaa Dep. at 55:20-56:2, December 18, 2013]. Mr. Medearis testifies that he could perform his job duties without standing more than an hour at a time. [Medearis Decl. at ¶¶ 2-25]. Therefore, CVS would not have suffered any undue hardship.

### e) Allowing Mr. Medearis to take frequent breaks would not cause CVS an undue hardship.

CVS did not ask Mr. Medearis what the doctor meant about frequent breaks. [Henderson Dep. at 44:14-4416, December 17, 2013]. CVS does not know what the doctor meant about taking frequent breaks. [Henderson Dep. at 44:25-45:04, December 17, 2013]. CVS didn't ask how many breaks the doctor was recommending. [Henderson Dep. at 134:07-134:10, December 17, 2013]. CVS did not ask Mr. Medearis for clarification about breaks. [Henderson Dep. at 134:15-134:20, December 17, 2013]. CVS does not know how long the breaks should last. [Henderson Dep. at 205:1-17,

December 17, 2013]. Because CVS knows nothing about the reasonable

accommodation, CVS cannot argue it's unreasonable.

**f) CVS did not provide Mr. Medearis with a reasonable accommodation.**

The magistrate judge held Defendant had provided Mr. Medearis

with a reasonable accommodation. Such ruling by the magistrate judge

was error. The leave provisions under the FMLA were never intended to

be a substitute for the reasonable accommodation requirement under the

ADA.  In footnote 7, the magistrate judge held Mr. Medearis' argument

that FMLA is not a reasonable accommodation is unfounded. In support

of his argument, Mr. Medearis cited federal regulations and the Eleventh

Circuit. See 29 C.F.R. § 825.702 (a); see also Gilliard v. Georgia Dept. of

Corrections, 500 Fed. Appx. 860, 864 (2012) (the leave provisions of

FMLA are wholly distinct from the reasonable accommodation

obligations of employees covered under the ADA). The regulations

states in relevant part:

(a) Nothing in FMLA modifies or affects any Federal or State law
prohibiting discrimination on the basis of race, religion, color, national
origin, sex, age, or disability (e.g., Title VII of the Civil Rights Act of
1964, as amended by the Pregnancy Discrimination Act). FMLA's
legislative history explains that FMLA is "not intended to modify or
affect the Rehabilitation Act of 1973, as amended, the regulations

concerning employment which have been promulgated pursuant to that statute, or the Americans with Disabilities Act of 1990 [as amended] or the regulations issued under that act. Thus, the leave provisions of the [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the [ADA], employers who receive Federal financial assistance, employers who contract with the Federal government, or the Federal government itself. The purpose of the FMLA is to make leave available to eligible employees and employers within its coverage, and not to limit already existing rights and protection." S. Rep. No. 103-3, at 38 (1993). An employer must therefore provide leave under whichever statutory provision provides the greater rights to employees. When an employer violates both FMLA and a discrimination law, an employee may be able to recover under either or both statutes (double relief may not be awarded for the same loss; when remedies coincide a claimant may be allowed to utilize whichever avenue of relief is desired. Laffey v. Northwest Airlines, Inc.,567 F.2d 429, 445 (D.C. Cir. 1976),cert. denied, 434 U.S. 1086 (1978).

(b) If an employee is a qualified individual with a disability within the meaning of the ADA, the employer must make reasonable accommodations, etc., barring undue hardship, in accordance with the ADA. At the same time, the employer must afford an employee his or her FMLA rights. ADA's "disability" and FMLA's "serious health condition" are different concepts, and must be analyzed separately. FMLA entitles eligible employees to 12 weeks of leave in any 12-month period due to their own serious health condition, whereas the ADA allows an indeterminate amount of leave, barring undue hardship, as a reasonable accommodation. FMLA requires employers to maintain employees' group health plan coverage during FMLA leave on the same conditions as coverage would have been provided if the employee had been continuously employed during the leave period, whereas ADA does not require maintenance of health insurance unless other employees receive health insurance during leave under the same circumstances.

Mr. Medearis is entitled to twelve weeks of leave under FMLA if

he has a serious medical condition. This right has nothing to do with the

rights under the ADA. "The leave provisions of the [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the ADA." Id. "The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief." Navarro v. Pfizer Corp., 261 F.3d 90, 101 (1st Cir. 2001). Defendant did not provide Mr. Medearis with a reasonable accommodation, Defendant forced Mr. Medearis to go out on FMLA. FMLA leave does not qualify for reasonable accommodation because a plaintiff does not have to be disabled to qualify for leave under FMLA.  See Hatchet v. Philander Smith College, 251 F.3d 670, 677 (8th Cir., 2001) (The FMLA does not require an employer to allow an employee to stay in a position that the employee cannot perform. This type of claim is addressed under the ADA)); Morales v. Georgia Dept. of Human Resources, 2010 WL 4639279 *8 (M.D. Ga. Nov. 8, 2010) (Placing an employee on FMLA leave does not mean that an employer regards the employee as disabled for ADA purposes. "ADA's 'disability' and FMLA's serious health condition are different concepts and must be analyzed separately.); Hurlbert v. St. Mary's Health Care System, Inc., 439 F.3d 1286, 1295

(11th Cir. 2006) (As the Eighth Circuit pointed out in <u>Stekoff</u>, there may be some parallels between the ADA and FMLA, but applicable regulations explicitly state that "ADA's 'disability' and [the] FMLA's 'serious health condition' are different concepts and must be analyzed separately."); <u>Brown v. Montgomery Surgical Center</u>, 2013 WL 1163427 *5 (M.D. Alabama March 20, 2013) (The leave provisions of the FMLA are 'wholly distinct from the reasonable accommodation obligations of employers covered under the ADA."); and <u>Vincent v. Wells Fargo Guard Services, Inc. of Fla.</u>, 3 F.Supp.2d 1405, 1420 (S.D. Florida March 10, 1998) ([T]he Court concludes that Wells Fargo's attempt to read ADA elements into the FMLA would violate the spirit and purpose of the FMLA.).

District Courts in Texas have held that providing leave under FMLA does not qualify as an employer's obligation to provide reasonable accommodation under the ADA. <u>See</u> <u>Munoz v. Dchosphere LLC</u>, 2010 WL 2838356 *13 (W. D. Texas, July 15, 2010) (However, FMLA leave is not a reasonable accommodation under the ADA; rather it is a right enforceable under a separate statutory provision.); <u>Trevion v. United</u>

Parcel Service, 2009 WL 3423039 *12 (N.D. Texas, Oct. 23, 2009) (The Court will not consider [Plaintiff's] allegations related to FMLA leave as cognizable under and ADA claim for failure to accommodate. FMLA leave is not a reasonable accommodation under the ADA; rather, it is a right enforceable under a separate statutory provision."); Harville v. Texas A & M University, 833 F.Supp.2d 645, 661 (S.D. Texas, June 8, 2011) (FMLA leave is not a reasonable accommodation under the ADA).

District courts in other jurisdictions have also held employers must provide reasonable accommodation not related to FMLA. See Rogers v. New York University, 250 F.Supp.2d 310, 315 (S.D. New York, Sept. 4, 2002) (The leave provisions of the FMLA are wholly distinct from the reasonable accommodation obligations of employers under the ADA.);

Under the ADA analysis, an employer must provide a reasonable accommodation to a qualified employee under the ADA unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 42 U.S.C. § 12112(b)(5)(A); see also 29 C.F.R. § 1630.9(a). As one court explains, "[these are difficult, fact intensive, case-by-case analyses, ill-served by

per se rules or stereotypes." <u>Garcia-Ayala v. Lederle Parenterals, Inc.</u>, 212

F.3d 638 50 (1ˢᵗ Cir. 200). The regulations clearly states "other

accommodations could include permitting the use of accrued paid leave or

providing additional unpaid leave for necessary treatment." 29 C.F.R. §

1630.2 (o). The magistrate judge erred by ruling Mr. Medearis was

provide a reasonable accommodation.

### II.   THERE ARE MATERIAL ISSUES OF FACT FOR MR. MEDEARIS RACIAL DISCRIMINATION CLAIM.

### a) Mr. Medearis suffered an adverse employment action.

The Supreme Court has defined an adverse employment action as

follows: "A tangible employment action constitutes significant change in

employment status such as hiring, firing, failing to promote, reassignment

with significantly different responsibilities or a decision causing a

significant change in benefits." <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S.

742, 761, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998). The Eleventh Circuit

as held:

> We therefore hold that, to prove adverse employment action
> in a case under Title VII's anti-discrimination clause, an
> employee must show a serious and material change in the
> terms, conditions, or privileges of employment. Moreover,
> the employee's subjective view of the significance and

> adversity of the employer's action is not controlling; the
> employment action must be materially adverse as viewed by
> a reasonable person in the circumstances.

Davis v. Town of Lake Park Florida, 245 F.3d 1232, 1239 (11th Cir. 2001).

"Whether an action is sufficient to constitute an adverse employment

action must be determined on a case by case basis." Gupta v. Fla. Bd. Of

Regents, 212 F.3d 571, 587 11th Cir. 2000). "We use an objective test,

asking whether a reasonable person in [the plaintiff's] position would

view the employment action in question as adverse." Hinson v. Clinch

Cty. Ga Bd. Edu, 231 F.3d 821,829 (11th Cir., 2000). A reasonable person

performing the job duties as Mr. Medearis would view the actions of CVS

as adverse.

### III. THERE ARE MATERIAL ISSUES OF FACT FOR MR. MEDEARIS' CONSTRUCTIVE DISCHARGE CLAIM.

Constructive discharge occurs when an employer deliberately makes

an employee's working conditions intolerable and thereby forces him to quit

his job. Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 244

(4th Cir. 1997); accord Young v. Southwestern Savings and Loan Ass'n, 509

F.2d 140, 144 (5th Cir. 1975). A Plaintiff must show "the work environment

and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." Virgo v. Riviera Beach Assoc., Ltd., 30 F.3d 1350, 1363 (11th Cir. 1994); See also Poole v. Country Club of Columbus, Inc., 129 F.3d 551, 553 (11th Cir. 1997); Kilgor v. Thompson &Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996).

A reasonable person performing the job duties as Mr. Medearis would have no other choice but to leave. The investigation CVS performed was no help. [Exhibit 14]. The investigatory did not interview witness on behalf of Mr. Medearis. [Medearis Dep. at 180:13-21, November 15, 2013]. Mr. Medearis informed the investigatory that he had recorded conversations. The investigatory did not ask for the recordings. [Medearis Dep. at 181:1-15, November 15, 2013] [Medearis Dep. at 366:11-22, January 21, 2014] [Medearis Dep. at 368:13-17, January 21, 2014].

Mr. Lindler laughed in Mr. Medearis face when he heard about Mr. Medearis's complaints. Mr. Lindler just gave Mr. Medearis another write-up. [Medearis Dep. at 182:1-13, November 15, 2013]. Mr. Lindler told Mr. Medearis that he was going to be fired within a year. [Medearis Dep. at 350:4-13, January 21, 2014].

Mr. Lindler made it so Mr. Medearis would have no hours for employees to help him run the store. Mr. Lindler took away Mr. Medearis assistant manager. [Medearis Dep. at 256:1-20, January 21, 2014] [Medearis Dep. at 273:11-24, January 21, 2014] [Medearis Dep. at 364:1-22, January 21, 2014] [Medearis Dep. at 45:2-14, January 21, 2014] [Medearis Dep. at 90:1-25, November 15, 2013] [Medearis Dep. at 97:22-25, November 15, 2013] [Medearis Dep. at 140:7-22, November 15, 2013] [Medearis Dep. at 150:22-151:5, November 15, 2013]

Without employees and hours to pay employees, Mr. Medearis had no other choice but to quit. Mr. Medearis was being harassed to the point he had to seek treatment. [Exhibit 41 p. 12]

## **CONCLUSION**

For the reasons stated above, there are genuine issue of material fact and the Court should not adopt the Magistrate Judge's final report and recommendation.

Respectfully submitted this Tuesday, October 14, 2014

s/Michael O. Mondy
Michael O. Mondy, Esq.
Georgia Bar No. 897950
Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **KIRK MEDEARIS** | ) |
| | ) |
| | ) |
| **Plaintiff,** | ) **CASE NO. 1:13-CV-1847-TWT-** |
| **vs.** | ) **JFK** |
| | ) |
| **CVS PHARMACY** | ) |
| **Defendant.** | ) |
| | ) |
| | ) |
| | ) |
| | ) |

_____

## <u>CERTIFICATE OF SERVICE</u>

Tracey T. Barbaree
**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
Suite 4800
Atlanta, Georgia 30303

     Respectfully submitted this Tuesday, October 14, 2014

<u>s/Michael O. Mondy</u>
Michael O. Mondy, Esq.
Georgia Bar No. 897950
Attorney for Plaintiff

**MICHAEL O. MONDY, P.C.**
925B Peachtree Street NE #329
Atlanta, Georgia 30309
Office: 404.492.9568
Facsimile: 404.492.7074
mondy@mondypc.com